NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| PATRICIA JEAN MORRIS,<br><br>　　　　　　　　Plaintiff,<br><br>　　v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>　　　　　　　　Defendant. | Civil Action No.: 20-cv-10273<br><br>**OPINION** |

**CECCHI, District Judge.**

**I.　INTRODUCTION**

Before the Court is Plaintiff Patricia Jean Morris's ("Plaintiff") appeal seeking review of a final decision by the Commissioner of the Social Security Administration ("Commissioner" or "Defendant") denying her application for Disability Insurance Benefits ("DIB"), pursuant to Title II of the Social Security Act ("SSA" or the "Act").  This matter is decided without oral argument pursuant to Federal Rule of Civil Procedure 78.  For the reasons set forth below, the decision of the Administrative Law Judge ("ALJ") is affirmed.

**II.　BACKGROUND**

Plaintiff is a 57-year-old woman, who reports suffering from coronary artery disease, diabetes mellitus, degenerative joint and disc disease, obesity, sleep apnea, and dyspnea. Tr.[1] at 14, 17.  Plaintiff testified that she received her GED, and previously, she worked at a deli counter and as a cashier. *Id.* at 16–17.

Records indicate that Plaintiff has had coronary artery disease since before 2010, and

---

[1] "Tr." refers to the certified record of the administrative proceedings. ECF No. 7.

received a stent to treat her condition. *Id.* at 17. After her procedure, which occurred in 2010, records from follow-up cardiac evaluations indicate that Plaintiff has been doing "fairly well." *Id.* While Plaintiff has reported recurring bouts of chest pain, examinations have attributed this discomfort to her weight, as well as high stress levels, which Plaintiff attempted to address by quitting her job at a supermarket. *Id.* at 17–18. Even without this source of stress, Plaintiff testified that she still experiences chest pain, and suffers from hypertension, sleep apnea, and shortness of breath. *Id.* at 16. Nevertheless, Plaintiff's examinations reveal that her cardiac condition is mostly normal, and that she is without significant cardiac abnormalities. *Id.* at 17.

In addition to her coronary disease, records also indicate that Plaintiff has been treated for degenerative joint and disc disease. Beginning around June 2014, Plaintiff was examined and treated for pain emanating from her neck, back, hips, and knees. *Id.* at 18. From 2016 until 2019, Plaintiff received chiropractic care to address her joint pain, and records indicate that, by 2018, treatment appeared effective, and Plaintiff was responding well to care. *Id.* However, Plaintiff testified that she has trouble walking long distances, and that she uses a cane to relieve pressure on her joints. *Id.* at 16–17. Despite these limitations, records indicate that she has full range of motion in her spine, has suffered only mild degenerative change in her hips, and has been able to exercise. *Id.* at 19, 20. Plaintiff also testified that she does some work around the house, shops, and drives. *Id.* at 16, 36.

Plaintiff applied for DIB on March 20, 2017, alleging disability beginning January 1, 2013. Tr. at 12. Plaintiff's claim was denied initially on May 4, 2017, and upon reconsideration on September 15, 2017. *Id.* Plaintiff subsequently requested a hearing on October 2, 2017, which was held before the Administrative Law Judge ("ALJ") on March 15, 2019. *Id.* Following the hearing, on May 1, 2017, the ALJ issued a decision finding Plaintiff not disabled. *Id.* Plaintiff requested

review of the decision, and the Appeals Council denied the request on June 19, 2020. Tr. at 1.  On August 11, 2020, Plaintiff initiated this action. ECF No.1

### III.   LEGAL STANDARD

#### A.   Standard of Review

This Court has jurisdiction to review the Commissioner's decision under 42 U.S.C. §§ 405(g) and 1383(c)(3).  The Court is not "permitted to re-weigh the evidence or impose [its] own factual determinations," but must give deference to the administrative findings. *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011); *see also* 42 U.S.C. § 405(g).  Nevertheless, the Court must "scrutinize the record as a whole to determine whether the conclusions reached are rational" and supported by substantial evidence. *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978) (citations omitted).  Substantial evidence is more than a mere scintilla and is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Chandler*, 667 F.3d at 359 (citations omitted).  If the factual record is adequately developed, substantial evidence "may be 'something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'" *Daniels v. Astrue*, No. 08-cv-1676, 2009 WL 1011587, at *2 (M.D. Pa. Apr. 15, 2009) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)).  In other words, under this deferential standard of review, the Court may not set aside the ALJ's decision merely because it would have come to a different conclusion. *See Cruz v. Comm'r of Soc. Sec.*, 244 F. App'x 475, 479 (3d Cir. 2007).

#### B.   Determining Disability

In order to be eligible for benefits under the SSA, a plaintiff must show she is disabled by demonstrating an inability to "engage in any substantial gainful activity by reason of any medically

3

determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Taking into account the plaintiff's age, education, and work experience, disability will be evaluated by the plaintiff's ability to engage in her previous work or any other form of substantial gainful activity existing in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). A person is disabled for SSA purposes only if her physical or mental impairments are "of such severity that [s]he is not only unable to do [her] previous work, but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 1382c(a)(3)(B).

Decisions regarding disability will be made individually and will be "based on evidence adduced at a hearing." *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000) (citing *Heckler v. Campbell*, 461 U.S. 458, 467 (1983)). Congress has established the type of evidence necessary to prove the existence of a disabling impairment by defining a physical or mental impairment as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382(a)(3)(D).

### C.   Sequential Evaluation Process

The Social Security Administration follows a five-step, sequential evaluation to determine whether a plaintiff is disabled within the meaning of the statute. 20 C.F.R. §§ 404.1520, 416.920. First, the ALJ must determine whether the plaintiff is currently engaged in substantial gainful activity. *Sykes*, 228 F.3d at 262. Second, if she is not, the ALJ determines whether the plaintiff has an impairment that limits her ability to work. *Id.* Third, if she has such an impairment, the ALJ considers the medical evidence to determine whether the impairment is listed in 20 C.F.R.

Part 404, Subpart P, Appendix 1 (the "Listings"). If it is, this results in a presumption of disability. *Id.* If the impairment is not in the Listings, the ALJ must determine how much residual functional capacity ("RFC") the applicant retains despite her impairment. *Id.* at 263. Fourth, the ALJ must consider whether the plaintiff's RFC is enough to perform her past relevant work. *Id.* Fifth, if her RFC is not enough to perform her past work, the ALJ must determine whether there is other work in the national economy the plaintiff can perform. *Id.*

The evaluation continues through each step unless it is determined at any point the plaintiff is or is not disabled. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The plaintiff bears the burden of proof at steps one, two, and four, upon which the burden shifts to the Commissioner at step five. *Sykes*, 228 F.3d at 263. Neither party bears the burden at step three. *Id.* at 263 n.2.

IV. **DISCUSSION**

   A. **Summary of the ALJ's Decision**

At step one, the ALJ determined that Plaintiff did not engage in any substantial gainful activity between January 1, 2013, her alleged onset date, and June 30, 2017, her date last insured. Tr. at 14. The ALJ recognized that although Plaintiff worked at Ronetco supermarkets during this period, her work activity, which resulted in documented earnings of $3,308.18, did not rise to the level of substantial gainful activity. *Id.* At step two, the ALJ found that Plaintiff had the following severe impairments: degenerative disc disease, coronary artery disease, diabetes mellitus, degenerative joint disease, and obesity. *Id.* The ALJ also considered whether Plaintiff's sleep apnea constituted a severe impairment, but found that, based on notes from Plaintiff's primary care physician, Dr. Nadarajah, and a sleep study, Plaintiff's sleep apnea did not have the requisite limiting effects on her ability to perform basic work functions. *Id.* at 15. At step three, the ALJ determined that Plaintiff's impairments, whether considered alone or in combination, did not meet

5

or medically equal the severity of one of the impairments in the Listings. *Id*. Because the ALJ found that Plaintiff's impairments did not meet such severity, the ALJ then determined Plaintiff's RFC before moving to step four. *Id.* at 16. Based on all the evidence in the record, the ALJ found that Plaintiff had the RFC to perform light work as defined in 20 C.F.R. § 404.1567(b), except that she could only occasionally climb ramps, stairs, ladders, ropes, and scaffolds, as well as only occasionally balance, stoop, kneel, crouch, and crawl. *Id.* The ALJ also found that Plaintiff could never be exposed to unprotected heights and hazardous moving mechanical parts. *Id.* At step four, in light of her RFC, the ALJ found that Plaintiff was unable to perform her past relevant work. *Id.* at 20. Finally, at step five, the ALJ determined that, based on the vocational expert's testimony at the administrative hearing on March 15, 2019, there were jobs in significant numbers in the national economy that Plaintiff could perform, given her age, education, work experience, and RFC.[2] *Id.* at 21. Thus, the ALJ concluded that Plaintiff was not disabled under the SSA during the period from January 1, 2013 through June 30, 2017. *Id.*

### B.     Plaintiff's Arguments on Appeal

On appeal, Plaintiff argues that the ALJ erred in concluding that Plaintiff had the RFC to perform light work, with some limited exceptions. Specifically, Plaintiff argues that the ALJ's decision was not based on substantial evidence because he improperly weighed the medical evidence in the record. ECF No. 11 at 14–22. Plaintiff further argues that the ALJ erred in finding that Plaintiff's statements regarding the intensity, persistence, and limiting effects of her symptoms were "not entirely consistent with the medical evidence and other evidence in the record." *Id.* at 22–25. The Court will consider each argument in turn.

---

[2] Specifically, the vocational expert testified that Plaintiff could work as a sales attendant, survey worker, and page (library), which are classified as light work. Tr. at 21.

### 1. Weighing the Medical Opinions

First, Plaintiff argues that the ALJ erred in affording little weight to the opinions of Plaintiff's treating sources, including Chiropractor Feld, Nurse Practitioner Fernicola, Dr. Schwarz, and Dr. James, while granting great weight to the opinions of the state agency's non-treating physicians, Dr. Simpkins and Dr. Shahinian. Generally, a treating physician's opinion should be given significant weight because it can "reflect[] expert judgment based on a continuing observation of the patient's condition over a prolonged period of time." *Plummer v. Apfel*, 186 F.3d 422, 429 (3d. Cir. 1999) (citation and quotation marks omitted). However, an ALJ may still "afford a treating physician's opinion . . . less weight depending upon the extent to which supporting explanations are provided." *Id.* (citing *Newhouse v. Heckler*, 753 F.2d 283, 286 (3d Cir. 1985)); *see also* 20 C.F.R § 404.1527(c)(2) (allowing an ALJ to discount a treating physician's opinion if it is inconsistent with substantial evidence in the record).

Beginning with Chiropractor Feld, Plaintiff argues that the ALJ was incorrect to assign little weight to his opinion regarding Plaintiff's shortness of breath and dizziness. First, Plaintiff contends that an "ALJ may not ignore the opinion" of a treating chiropractor, which Plaintiff asserts the ALJ did here. ECF No. 11 at 16. However, the ALJ did not ignore Chiropractor Feld's findings. Tr. at 19. Indeed, the ALJ noted that, in 2017, Chiropractor Feld found Plaintiff could lift and carry ten pounds, sit for less than six hours a day, and stand or walk for less than two hours a day. *Id*. The ALJ also acknowledged that Chiropractor Feld determined Plaintiff was further limited due to shortness of breath and dizziness. *Id.*

Second, Plaintiff argues that the ALJ improperly discounted Chiropractor Feld's opinion on the grounds that it included findings regarding shortness of breath and dizziness unrelated to chiropractic care. *Id.* at 16–17. However, that contention is unavailing. As a threshold matter, the

7

ALJ correctly identified chiropractors as a non-medical source. Tr. at 19; *Giese v. Berryhill*, No. 17-cv-1244, 2019 WL 359456, at *4 (W.D. Pa. Jan. 29, 2019) (finding that, based on Social Security Administration regulations, a chiropractor is not a medically acceptable source). The ALJ then concluded that Chiropractor Feld's findings on Plaintiff's shortness of breath and dizziness constituted a medical opinion regarding Plaintiff's pulmonary condition unrelated to chiropractic care. Tr. at 19. Based on this conclusion, the ALJ determined that Chiropractor Feld was not qualified to offer a medical opinion related to Plaintiff's pulmonary condition because he is a non-medical source treating Plaintiff's musculoskeletal impairments. *Id.* Thus, the ALJ discounted Chiropractor Feld's assessment. *Id.*; *Myers v. Berryhill*, 373 F. Supp. 3d 528, 537 (M.D. Pa. 2019) (finding that non-medical sources may not offer medical opinions). While Plaintiff argues the ALJ erred by categorizing Chiropractor Feld's opinion regarding Plaintiff's shortness of breath and dizziness as a medical opinion, such a disagreement with an ALJ's conclusion is insufficient grounds to set aside a decision. *Cruz*, 244 F. App'x at 479. Accordingly, substantial evidence supported the ALJ's decision to discount Chiropractor Feld's opinion. *See Giese*, 2019 WL 359456, at *4 (affirming an ALJ's decision to afford little weight to a chiropractor's opinion because it included findings beyond a chiropractor's expertise).

Similarly, Plaintiff argues that the ALJ improperly weighed the opinion of Nurse Practitioner Fernicola, a nurse practicing in the office of Dr. Nadarajah, Plaintiff's former primary care physician. Tr. at 19. Plaintiff contends that the ALJ impermissibly ignored her opinion and failed to identify evidence in the record inconsistent with her findings. ECF No. 11 at 18. However, like with Chiropractor Feld, the ALJ explicitly considered Nurse Practitioner Fernicola's opinion and explained why it merited little weight. The ALJ found that although Nurse Practitioner Fernicola determined Plaintiff had severe work-preclusive limitations, they were inconsistent with

the medical record evidence. Tr. at 19–20.  As the ALJ noted, Plaintiff's medical records demonstrated that her cardiac functions were mostly normal, she suffered only mild degenerative change in her hips and retained full range of motion in her spine, she responded well to musculoskeletal treatment, and she had begun exercising three times a week to address her weight issues. *Id.* at 17–18, 20.  Moreover, the ALJ acknowledged that Plaintiff performs some chores at home, including light cooking, cleaning, and tending to personal finances, and shops. *Id.* at 16. Where an ALJ explains why a particular amount of weight was afforded to a piece of evidence, even if "set forth in a sentence or short paragraph, there is no basis for disturbing the ALJ's weight determination." *Bonner v. Saul*, No. 19-cv-1370, 2020 WL 4041052, at *14 (M.D. Pa. July 17, 2020).  Accordingly, as the ALJ found inconsistencies between Nurse Practitioner Fernicola's findings and the record, substantial evidence supported his decision to give her opinion little weight. *See O'Brien v. Saul*, No. 19-cv-5433, 2020 WL 6799178, at *7 (E.D. Pa. Nov. 19, 2020) (finding that highlighting inconsistencies in the record is sufficient to afford an opinion little weight).

Turning to Dr. Schwarz, a treating cardiologist, Plaintiff argues that the ALJ should have given more weight to his finding that Plaintiff may need periods of rest during work-related physical exertion. ECF No. 11 at 19.  However, in discounting this finding, the ALJ noted that Dr. Schwarz stated he was unable to "provide a medical opinion regarding the [Plaintiff]'s ability to do work-related activities." *Id.*  Further, the ALJ found that Dr. Schwarz's treatment notes reported that Plaintiff's cardiac examinations and test results from a myocardial perfusion study and an EKG were mostly normal without notable abnormalities. *Id.* at 18–19.  Accordingly, the ALJ's decision to not afford Dr. Schwarz's opinion regarding Plaintiff's work-related activities great weight was based on substantial evidence. *See Bonner*, 2020 WL 4041052, at *14.

To the extent Plaintiff argues that Dr. Schwarz's opinion regarding work-related activity deserved more weight because it was corroborated by Dr. James, that argument is unavailing. ECF No. 11 at 20. Dr. James completed an application with an attached prescription for Plaintiff to obtain a handicap parking permit. Tr. at 1032–33. According to this form dated April 2, 2018, Plaintiff required the permit because she "cannot walk two hundred feet without stopping to rest." Tr. at 1032. However, Dr. James selected this description from a list of six possible options enumerated on the application without explaining his selection or providing treatment notes expressing his own assessment of Plaintiff's condition. Tr. at 1032–33. Without more information from Dr. James, the ALJ properly discounted Dr. Schwarz's opinion in accordance with substantial evidence. *See Orta v. Comm'r of Soc. Sec.*, No. 18-cv-3230, 2020 WL 525939, at *5 (D.N.J. Jan 31, 2020) (discounting a treating physician's conclusory finding on an application for "License Plates and/or Placards for Persons with a Disability" that a plaintiff's back pain limited his ability to walk where the physician provided no further explanation or specific assessment of plaintiff's condition).

Finally, Plaintiff argues that the ALJ erred by affording great weight to the opinions of Dr. Simpkins and Dr. Shahinian, non-treating state agency physicians. ECF No. 11 at 20–21. However, the opinions of non-examining state agency sources may receive significant weight because they possess substantial knowledge of the Social Security disability program. *See Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011); *Smith v. Colvin*, No. 13-cv-209, 2014 WL 345015, at *4 (W.D. Pa. July 15, 2014) (citations omitted). Here, the ALJ acknowledged that Dr. Simpkins and Dr. Shahinian were non-examining sources. Tr. at 20. Status as non-treating physicians notwithstanding, the ALJ explained that Dr. Simpkins and Dr. Shahinian's independent assessments that Plaintiff could perform light work with some postural

10

limitations deserved great weight because their opinions were consistent with the substantial evidence in the record, and were informed, in part, by their specialized knowledge of the Social Security Administration's policy and procedures. *Id.*; *see also Chandler*, 667 F.3d at 361–62 (finding that an ALJ could rely on the opinion of a state agency non-treating physician where the ALJ also considered other evidence in the record). Because the ALJ explained that Drs. Simpkins and Shahinian's opinions were consistent with the record and were informed by their knowledge of the Social Security system, his decision to grant them great weight was supported by substantial evidence. *See Brown v. Astrue*, 649 F.3d 193, 196 (3d Cir. 2011).

In sum, the ALJ made findings in accordance with the substantial evidence in the record regarding the opinions of Chiropractor Feld, Nurse Practitioner Fernicola, Dr. Schwarz, Dr. James, Dr. Simpkins, and Dr. Shahinian, and thus the ALJ committed no reversable error.

### 2.     Evaluation of Plaintiff's Subjective Complaints

Finally, Plaintiff argues that the ALJ failed to properly evaluate Plaintiff's subjective complaints of pain. ECF No. 11 at 22–25. The Regulations provide a framework under which the ALJ must consider a claimant's subjective complaints. *See* 20 C.F.R. § 404.1529; *see also* SSR 16-3p, 2017 WL 5180304, at *2 (October 25, 2017). At step one, the ALJ must determine whether there is an underlying medically determinable impairment that could reasonably be expected to produce the claimant's pain or other symptoms. 20 C.F.R. § 404.1529. If a medically determinable impairment is found, the ALJ proceeds to step two. *Id.* At step two, the ALJ must evaluate the "intensity, persistence, and limiting effects" of the claimant's symptoms to determine the extent to which they limit the claimant's functioning. *Id.* The ALJ may discredit the claimant's statements as to the "intensity, persistence, and limiting effects" of symptoms if they are not supported by objective medical evidence and other evidence. *Id.*

11

Here, the ALJ properly followed the two-step process as required by the Regulations. *See* Tr. at 16–20. At step one, the ALJ determined that Plaintiff had medically determinable impairments that could reasonably be expected to cause the alleged symptoms. *Id.* at 17. However, at step two, the ALJ found that Plaintiff's statements concerning the intensity, persistence, and limiting effects of those symptoms were "not entirely consistent with the medical evidence and other evidence in the record." *Id.* The ALJ then explained his decision to discredit Plaintiff's statements of disabling symptoms by pointing to specific objective medical and nonmedical evidence as required by 20 C.F.R. § 404.1529(c). The evidence cited by the ALJ in support of his determination that Plaintiff's statements were not entirely credible included: Plaintiff's relatively normal cardiac examinations, positive response to treatment for chest pain, joint pain, and obesity, full range of motion in her spine, and normal daily activities such as housework, preparing meals, shopping, and paying bills. Tr. at 16–20. Therefore, substantial evidence supports the ALJ's analysis of Plaintiff's subjective complaints. *See Davis v. Comm'r Soc. Sec.*, 105 F. App'x 319, 322 (3d Cir. 2004) (finding an ALJ relied on substantial evidence in discounting subjective complaints where an ALJ considered plaintiff's daily activities and objective medical reports); *see also Padgett v. Comm'r Soc. Sec.*, No. 16-cv-9414, 2018 WL 1399307, at *2 (D.N.J. Mar. 20, 2018) (finding substantial evidence supported ALJ's decision to discount plaintiff's subjective complaints where ALJ addressed plaintiff's history of medical treatment).

**V.    CONCLUSION**

For the reasons above, the ALJ's decision is affirmed. An appropriate Order will follow.

**DATE:** February 24, 2022

s/ Claire C. Cecchi
**CLAIRE C. CECCHI, U.S.D.J.**
